# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated, | |
| Plaintiff | Case No. |
| vs. | |
| QUOTEWIZARD.COM, LLC | CLASS ACTION COMPLAINT |
| Defendant. | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Andrew Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Quotewizard.com, LLC ("QuoteWizard" or "Defendant") sent pre-recorded message telemarketing calls to phone numbers, including Plaintiff, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive such calls, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Andrew Perrong is a Pennsylvania resident, and a resident of this District.

6. Defendant QuoteWizard.com, LLC is a Delaware corporation with its principal place of business in Seattle, WA. The Defendant engages in telemarketing into this District, as it did with the Plaintiff.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing call to the Plaintiff was placed into this District.

## The Telephone Consumer Protection Act

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. The TCPA also makes it unlawful to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(B).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

18. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM),

https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

19. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

20. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

21. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

## **Factual Allegations**

22. Defendant is in the business of selling leads to insurance agents, and providing those agents with potential customers and new business. *See* https://quotewizard.com/corp/about-us [https://archive.is/uQqg5].

23. To generate new leads, Defendant relies on telemarketing.

24. One of the telemarketing strategies used by Defendants involves the use of pre-recorded telemarketing calls to solicit potential customers either directly or via third party vendors it retains to make telemarketing calls on its behalf.

The Call to Mr. Perrong

25. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

26. Plaintiff's residential telephone number is (215) 322-XXXX (the "Number").

27. That number is on the National Do Not Call Registry.

28. On April 17, 2020 at 3:02 p.m., Plaintiff received a pre-recorded call on the Number from "Danny" with "Cheap Insurance Rates Online."

29. The call utilized an artificial intelligence and pre-recorded message technology known as an "Avatar," in which a telemarketer interacts with a consumer using pre-recorded messages.

30. In order to identify the legal entity behind this call, Plaintiff interacted with the "Avatar" and confirmed his contact information. He did so as he understood from his past experience dealing with illegal telemarketers that a follow up call would then be made by the entity responsible for the initial call, who could then be identified by Plaintiff and held to account for its illegal actions. Plaintiff rightly suspected that "Cheap Insurance Rates Online" was a fictitious name designed to disguise the entity of the entity legally responsible for the illegal telemarketing at issue.

31. Plaintiff also suspected that if he gave the telemarketer his real vehicle information on the initial illegal telemarketing call, that the entity who eventually called him back in response to the initial illegal telemarketing call would simply lie and deny any connection with the original call.

32. In anticipation of this deception, the Plaintiff told "Danny" with "Discount Auto Insurance Quotes" that he wanted a quotation for a 2010 Ford Explorer, despite never having owned this car. In addition, the Avatar mis-transcribed his name as "Andy Terrong." Plaintiff intentionally provided this information so that, when he received a follow up communication from an entity providing a quote for a 2010 Ford Explorer, he would know that the entity following up was responsible for the initial illegal telemarketing calls. Moreover, all the follow-up communications included the butchered version of Plaintiff's name.

33. True to form, approximately three hours later, Plaintiff received an e-mail from Geico Insurance seeking to sell an insurance policy to "Andy Terrong."

34. The e-mail from Geico confirmed that it was contacting Plaintiff because he had provided his information to "our partner site, Quotewizard."

35. However, the Plaintiff never submitted any information via QuoteWizard's website. The only information that precipitated the e-mail was the call from QuoteWizard.

36. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## QuoteWizard's Liability for the Telemarketing Calls

37. It is unclear at this stage whether QuoteWizard initiated the calls at issue itself or through a third party.

38. If QuoteWizard initiated the calls itself, it is directly liable for any TCPA violations.

39. Even if, however, QuoteWizard used a third party to make the illegal telemarketing calls at issue, it still is legally responsible for the calls.

40. The Federal Communication Commission ("FCC"), the entity tasked with promulgating rules and orders related to enforcement of the TCPA, has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 F.C.C. Rec. 12391, 12397 (1995).

41. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

42. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as QuoteWizard may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re* Dish Network Petition (May 2013 FCC Ruling), 28 F.C.C. Rec. 6574, 6588 (2013) (internal citations omitted).

43. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586.

44. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592.

45. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

## Class Action Allegations

46. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

47. The classes of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their residential land line or cellular telephone number; (c) using the telephone system(s) used in calling Plaintiff's Number; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

48. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

49. The class as defined above is identifiable through phone records and phone number databases.

50. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individual a day. Individual joinder of these persons is impracticable.

51. Plaintiff Perrong is a member of the class.

52. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

- Whether Defendant violated the TCPA by using pre-recorded message technology to call residential and cellular telephone numbers of class members;

- Whether Defendant placed calls without obtaining the recipients' prior consent for the call;

- Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

53. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

54. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

55. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

57. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Prohibition Against Telemarketing**
**Via Pre-Recorded Message**

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

61. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

63. The Defendant's violations were negligent and/or knowing.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff request the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services using an ATDS and/or artificial or prerecorded voice.

C. Because of Defendant's violations of the TCPA, Plaintiff seeks for himself and the other putative Class members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representatives of the Class, and

appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E. Such other relief as the Court deems just and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

                          PLAINTIFF,
                          By his attorneys

                          */s/ Clayton S. Morrow*
                          Clayton S. Morrow
                          Email: csm@consumerlaw365.com
                          Morrow & Artim, PC
                          304 Ross Street, 7th Floor
                          Pittsburgh, PA 15219
                          Telephone: (412) 281-1250