IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,<br><br>   Plaintiff<br><br>vs.<br><br>QUOTEWIZARD.COM, LLC<br><br>   Defendant. | Case No. 2:20cv2506-JCJ<br><br>CLASS ACTION COMPLAINT |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS**

   Just several weeks ago, on August 26, 2020, this Court denied QuoteWizard's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (ECF #16 "Motion to Dismiss #1") for lack of standing and failure to state a plausible claim for relief. *See* ECF #19 at 11-13 (finding the factual allegations set forth in the Complaint "clearly comport" with pleading requirements, and that QuoteWizard's claims to the contrary have "no merit"; recognizing the complaint "more than adequately" alleges that the plaintiff and class members suffered an invasion of their interests codified via the TCPA, and that the plaintiff had sufficiently pled a nexus between QuoteWizard and the April 17, 2020 call to the Plaintiff). QuoteWizard did not file a Motion to Reconsider. Instead, it simply filed a second Rule 12(b)(1) Motion to Dismiss, again claiming that since Mr. Perrong could not name the entity who called him on April 17, 2020, he did not have standing to assert a claim against QuoteWizard. *See* ECF #23-1. The only difference between Motion to Dismiss #1 and the current Motion to Dismiss, is QuoteWizard's contention that the original motion was a "facial" attack on the Complaint, and the instant motion is a "factual" attack on the

Complaint.[1] There is no mention whatsoever anywhere in QuoteWizard's Second Motion to Dismiss as to the August 26, 2020 Order of this Court. It is as if the decision never issued.

For the reasons set forth below QuoteWizard's Second Motion to Dismiss should similarly be DENIED.

## I. FACTS[2]

On April 17, 2020, at 3:02 p.m., Mr. Perrong received a pre-recorded telemarketing call on his residential telephone line that was listed on the National Do Not Call Registry.[3] *See* ECF #1 at ¶27-28; Exhibit A, Perrong Declaration at ¶10. The computer recorded message stated that the individual calling was "Danny" and the entity calling was "Cheap Insurance Rates Online." ECF 1 ¶ 28-29; Exhibit A at ¶ 10. The call utilized an artificial intelligence and pre-recorded message technology known as an "Avatar," in which a telemarketer interacts with a consumer using pre-recorded messages. ECF 1 at ¶29; Exhibit A at ¶11. Correctly suspecting from his past experience dealing with illegal telemarketers that "Danny" and "Cheap Insurance Rates Online" were fictitious names, Mr. Perrong immediately knew he would have to conduct his own

---

[1] In support of its "factual" attack, QuoteWizard attaches the declaration of Tricia Winkler, its Vice President of Call Operations, which QuoteWizard asks this Court to accept as true.

[2] As QuoteWizard asserts a "factual" attack on the Complaint, Mr. Perrong attaches hereto at Exhibit A, his sworn declaration attesting that the facts as pled in the Complaint are true.

[3] The DNC allows consumers to register their personal telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

investigation to identify the legal name of the entity calling, and any other entities involved in the illegal call at issue.[4] ECF 1. at ¶ 30-31; Exhibit A at ¶ 9-15.

In response to the Avatar's query as to whether Mr. Perrong was interested in receiving a follow up call from an "auto rate specialist" from Cheap Insurance Rates Online, Mr. Perrong initially agreed to receive follow up calls from Cheap Insurance Rates Online, and provided it with fictitious contact information. *Id.* Mr. Perrong did so as he understood from his past experience dealing with illegal telemarketers that a follow up call would then be made by the entity responsible for the initial call, who could then be identified and held to account for the illegal initial call. *Id*. Mr. Perrong also suspected that if he gave the telemarketer his real name and vehicle information on the initial illegal telemarketing call, that the entity who eventually called him back would simply deny any connection with the original call. ECF 1 at ¶ 31; Exhibit A at ¶ 15. In anticipation of this deception, Mr. Perrong told "Danny" that he wanted a quotation for a 2010 Ford Explorer, despite never having owned such a car. ECF 1 at ¶ 32; Exhibit A at ¶ 15. In addition, the Avatar mis-transcribed Mr. Perrong's name as "Andy Terrong."  ECF 1 at ¶ 32; Exhibit A at ¶ 16. Mr. Perrong intentionally provided this information so that when he received a follow up communication from an entity providing a quote for a 2010 Ford Explorer, or looking for "Andy Terrong," he would know that the entity following up was responsible for the initial illegal telemarketing call. *Id.*

After Mr. Perrong provided the Avatar with the above contact information, the Avatar began asking Mr. Perrong for more detailed personal information such as his birth date. Mr. Perrong informed the Avatar he was uncomfortable sharing this information. *Id.* at ¶17-18.

---

[4] The TCPA mandates that telemarketers identify themselves at the outset of a telemarketing call to a consumer. The failure to do so is itself a violation of the law.

3

Approximately three hours later, Mr. Perrong received an e-mail from Geico Insurance seeking to sell an insurance policy to "Andy Terrong." ECF 1 at ¶33; Exhibit A at ¶19. The e-mail from Geico confirmed it was contacting Mr. Perrong because he had provided his information to Geico's "partner" QuoteWizard. ECF 1 at ¶34; Exhibit A at ¶ 20.

The Complaint explicitly acknowledges that at this early stage of the litigation, Mr. Perrong is unaware whether QuoteWizard itself initiated the illegal telemarketing call at issue using the fictitous name "Cheap Insurance Rates Online," or if it hired a third party to make illegal telemarketing calls on its behalf. ECF 1 at ¶37-38. The Complaint explains, however, in detail the legal authority, as noted above, that recognizes that even if QuoteWizard did not make the illegal call itself, it can be held vicariously liable for the actions of any third party who was making the calls on its behalf. *Id.* at ¶ 40-44.

Significantly, Ms. Winkler *admits* in her Declaration that QuoteWizard did, in fact, purchase Mr. Perrong's data from a third party and did, in fact, call him twice on April 17, 2020, purportedly seeking to sell him insurance.[5] *See* Exhibit A at ¶23-24. *See* ECF #23-2, Declaration of Tricia Winkler at ¶5. QuoteWizard itself has thereby confirmed its connection to the initial illegal telemarketing call made to Mr. Perrong via Avatar pre-recorded message on April 17, 2020. At a minimum, this third party called Mr. Perrong on behalf of QuoteWizard, if it was not QuoteWizard itself that called Mr. Perrong with a false name and caller ID in order to obfuscate its identity. Further, by its own admission, QuoteWizard now admits it made two additional calls

---

[5] QuoteWizard claims these two additional calls did not violate the TCPA as Mr. Perrong "consented" to receive such calls. See ECF #23-1. To date, QuoteWizard has failed to produce Mr. Perrong's prior express consent signed in writing purportedly consenting to receive such calls. Mr. Perrong has denied ever consenting to receive telemarketing calls from QuoteWizard. Given QuoteWizard's admission that it made two calls to Mr. Perrong on April 17, 2020, he intends to move to amend the Complaint to add these additional calls and TCPA violations.

4

to Mr. Perrong's DNC listed residential phone. *Id.* Mr. Perrong was initially unaware that QuoteWizard made these two calls directly and will pursue evidence relating to these additional potential TCPA violations in discovery.

## II. BACKGROUND OF THE TCPA

The TCPA strictly regulates various forms of automated telemarketing- including telemarketing via pre-recorded message. Such calls are illegal and people hate them. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman). "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

Industry data confirms that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in September of 2019 at a rate of 150.8 million per day. www.robocallindex.com (last visited October 18, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.* The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited October 18, 2019). In fiscal year 2019, the FTC received 5.4 million complaints about unwanted telemarketing calls. Of those complaints, 71 percent were about robocalls. Federal Trade

Commission, *FTC Releases FY 2019 National Do Not Call Registry Data Book* (October 18, 2019), https://www.ftc.gov/news-events/press-releases/2019/10/ftc-releases-fy-2019-national-do-not-call-registry-data-book?utm_source=govdelivery.

The TCPA does not prohibit all telemarketing via pre-recorded message. Such calls are legal where the recipient has previously and explicitly consented to receive such calls. In this regard, the Federal Communications Commission has further explained:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

In addition, the Federal Communication Commission ("FCC"), the federal agency tasked by Congress to promulgate rules and orders related to enforcement of the TCPA (47 U.S.C. 227(b)(2)), has long recognized that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995). In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)). On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Direct Energy may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*See 2*8 FCC Rcd at 6588 (¶ 37) (May 2013) (internal citations omitted).

More specifically, the FCC went on to explain that even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34). The FCC further rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107. The FCC then went on to clarify the fact dependent circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*See* 28 FCC Rcd at 6592 (¶ 46).

### III.     LEGAL STANDARDS

> The Third Circuit has articulated the three proper bases for motions for reconsideration.
>
> The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1998). A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co*., 52 F.3d 1194, 1218 (3d Cir. 1995). Lazaridis's motion advanced the same arguments that were in his complaint and motions. Because this is not a proper basis for reconsideration, the District Court appropriately denied the motion.

*Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). A motion to dismiss will be denied unless there is no "reasonable expectation that discovery will reveal evidence" that would enable the trier of fact to find for the plaintiff. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 28 (2011). "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). TCPA claims need not be pled with particularity. *Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *29 (D. Mass. Jan. 24, 2020); *Robinson v. Midland Funding, LLC*, No. 10cv2261 MMA(AJB), 2011 U.S. Dist. LEXIS 40107, at *8 (S.D. Cal. Apr. 13, 2011); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1172 (N.D. Cal. 2010).

## IV. ARGUMENT

### A. QuoteWizard's Motion Does Not Meet the Standard for a Motion for Reconsideration—Indeed, It Does Not Even Cite the Standard for Reconsideration

QuoteWizard's second motion to dismiss rests on precisely the same legal theory as its first motion to dismiss—namely that Mr. Perrong has failed to allege a proper case that QuoteWizard should be held vicariously liable for an illegal phone call that directly led to QuoteWizard. Compare *Defendant's Brief in the Support of its Motion to Dismiss Plaintiff's Complaint,* ECF 16-1 at 8 ("No Plausible Factual Allegations to Plead Vicarious Liability") with *Defendant's Brief in the Support of its Motion to Dismiss Plaintiff's Complaint* ECF 23-1 at 6 ("because the alleged phone call at issue is not traceable to QuoteWizard at all: QuoteWizard did not make, and has no responsibility for, the alleged call.")

The Court clearly rejected QuoteWizard's assertion that Plaintiff's allegations could not support a claim of injury for which QuoteWizard could be held vicariously liable, fairly traceable to QuoteWizard's conduct:

> We likewise find that the Complaint more than adequately alleges that Plaintiff, and potentially a class of similarly situated individuals, suffered an invasion of their legally protected interest as codified in the TCPA and thus suffered a concrete and particularized, non-hypothetical injury in fact and that the complaint contains enough factual averments to make out a causal connection between the defendant identified here – QuoteWizard, and the complained-of telephone solicitation such that the plaintiff's injury can be said to be fairly traceable to QuoteWizard's business activity. Accordingly, the requisite nexus between the April 17, 2020 call to Plaintiff and the Defendant's action (as opposed to a third party not before the Court) has been sufficiently pled.

Memorandum and Order at 12, ECF 19. Because QuoteWizard has not identified an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or law or to prevent manifest injustice, its motion for reconsideration should be rejected. *Lazaridis*

9

*v. Wehmer*, 591 F.3d at 669 (3d Cir. 2010). An assertion that Defendant was right the first time and the Court was wrong is not a proper basis for a motion for reconsideration.

> **B. Like QuoteWizard's Prior "Facial" Attack on the Complaint, Its "Factual" Attack Also Falls Far Short: The Complaint Is Well Pled**

QuoteWizard claims the Complaint should be dismissed "because the alleged call is not traceable to QuoteWizard *at all*." *See* ECF #23 at 2 (emphasis in original). This same argument was previously squarely rejected by this Court. *See* ECF #19 at 12-13. QuoteWizard comes back to the Court—now armed with the Declaration of Ms. Winkler—and claims that because it is now making a "factual" challenge to the Complaint, Mr. Perrong can no longer rest on the allegations set forth in his Complaint. Accordingly, Mr. Perrong has submitted his sworn declaration (Exhibit A) that not only attests that all of the allegations set forth in the Complaint are true, but also notes that the Declaration of Ms. Winkler—in fact—confirms that QuoteWizard purchased Mr. Perrong's data from a third party and that, after it received this data, QuoteWizard itself called Mr. Perrong twice on April 17, 2020, following the initial illegal Avatar call to Mr. Perrong made by the fictitious "Danny" with "Cheap Insurance Rates Online." Ms. Winkler asserts that QuoteWizard cannot be liable to Mr. Perrong for the initial illegal telemarketing call because it did not make the call directly. *See* ECF #23-2, Declaration of Tricia Winkler at ¶7.

As a matter of law, as the Court previously held, there is no merit to the argument that a party can only be held liable under the TCPA is it placed a call directly. In a decision cited by this Court in denying QuoteWizard's prior motion to dismiss (ECF 19 at 10), Judge Stengel held:

> [E]ven if discovery shows that a third party agent acting on the defendant's behalf made the calls in question, the Telephone Consumer Protection Act would still provide for liability. The Supreme Court of the United States recently clarified

> that the Telephone Consumer Protection Act does provide for vicarious liability. See Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 673, 193 L. Ed. 2d 571 (2016) (the Federal Communication Commission "has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations . . . and we have no cause to question it")

*Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 U.S. Dist. LEXIS 175642, at *10 (E.D. Pa. Dec. 19, 2016)

Whether QuoteWizard is vicariously liable for the initial illegal telemarketing call—most likely made by the third party from whom QuoteWizard admittedly purchased Mr. Perrong's data from—is an issue of disputed fact. As detailed above, whether a defendant who benefits from illegal telemarketing—such as QuoteWizard—is vicariously liable for telemarketing calls made on its behalf by a third party is a fact-intensive inquiry analysis that ultimately requires a finder of fact to answer mixed questions of fact and law as to actual authority, apparent authority and ratification. Such issues are to be resolved at summary judgment or trial—surely not at the Rule 12(b) stage, as this court and an overwhelming majority of courts have recognized.[6] Resolving any doubt in this

---

[6] *See, e.g.*, *Richardson v. Verde Energy USA, Inc.,* No. 15-6325, 2016 U.S. Dist. LEXIS 175642 (E.D. Pa. Dec. 19, 2016) (denying motion to dismiss for failure to plead TCPA vicarious liability with specificity); *Hand v. Beach Entm't Kc*, 2020 U.S. Dist. LEXIS 80201 * 55-58 (W.D. Mo. Apr. 27, 2020) (granting TCPA class certification and denying defendant's motion for summary judgment as to vicarious liability recognizing the existence or nonexistence of a principal-agent relationship is a fact question left to the trier of fact); *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-cv-1127-WQH-KSC, 2018 U.S. Dist. LEXIS 3237, at *18 (S.D. Cal. Jan. 5, 2018) (upholding sufficiency of vicarious liability allegations); *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 U.S. Dist. LEXIS 132078 *9-12 (ND.CA)(August 3, 2018)(denying defendants class action motion for summary judgment on TCPA vicarious liability noting material facts in dispute); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817 (ND.Il 2016) (TCPA vicarious liability may be adjudicated summarily only where the evidence would not permit a reasonable jury to find for the nonmoving party); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 395-396 (M.D.N.C. 2015) (recognizing it as 'well established' that whether an agency relationship exists in context of a TCPA class action is a fact determination); *McCabe v. Caribbean Cruise Line, Inc.*, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014) (defendant's motion to dismiss TCPA vicarious liability claims denied as fact intensive merits inquiry required); *Legg v. Voice Media Grp., Inc.*, 2014 U.S. Dist. LEXIS 67623 (S.D. Fla. May 16,

regard, the FCC has recognized that consumers may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *See* 28 FCC Rcd. at 6592-93 ¶ 46 & n.139; *accord Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1198-99 (M.D. Tenn. 2017) (acknowledging that discovery is necessary to explore the full extent of relationships between defendants to explore vicarious liability).

Mr. Perrong has adequately alleged and supported through his sworn declaration that QuoteWizard is liable for the illegal telemarketing call at issue. The Second Motion to Dismiss on this basis should be DENIED.

## V.     CONCLUSION

For the reasons stated above, the Second Motion to Dismiss should be DENIED.

> PLAINTIFF,
>
> By his attorneys
>
> */s/ Anthony I. Paronich*
> Anthony I. Paronich
> PARONICH LAW, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> (508) 221-1510
> anthony@paronichlaw.com
>
> Matthew P. McCue

---

2014) ("summary judgment on TCPA vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal"); *The Siding & Insulation Co. v. Combined Ins. Grp., Ltd*, 2014 U.S. Dist. LEXIS 54056 (N.D. Ohio Apr. 17, 2014) (denying TCPA motion for summary judgment because "a disputed issue of material fact exists on the question of [defendant's] apparent authority"); *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, 2014 U.S. Dist. LEXIS 27758 (N.D. Ill. Mar. 03, 2014) (denying plaintiff's TCPA summary judgment motion "because a genuine issue remains as to what authorization defendant gave alleged agent); *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012) (denying motion to dismiss for failure to plead facts with specificity as to vicarious liability))..

                THE LAW OFFICE OF MATTHEW P. MCCUE
                1 South Avenue, Suite 3
                Natick, MA 01760
                Telephone: (508) 655-1415
                mmccue@massattorneys.net

                Clayton S. Morrow
                Email: csm@consumerlaw365.com
                Morrow & Artim, PC
                304 Ross Street, 7th Floor
                Pittsburgh, PA 15219
                Telephone: (412) 281-1250

                Edward A. Broderick
                BRODERICK LAW, P.C.
                176 Federal Street, 5th Floor
                Boston, MA 02110
                Telephone: (617) 738-7080
                ted@broderick-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

                By:  */s/ Anthony I. Paronich*
                        Anthony I. Paronich