# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff

vs.

QUOTEWIZARD.COM, LLC

    Defendant.

Case No. 2:20cv2506-JCJ

## DECLARATION OF ANDREW PERRONG

1. My name is Andrew R. Perrong. I am over 18 years old. I can testify competently to the undersigned statements.

2. My telephone number 215-322-XXXX is on the National Do-Not-Call Registry and has been since 2018. I have never removed it from the National Do-Not-Call Registry. It is registered in my name, at my address. I pay the bill.

3. I am the user and owner of 215-322-XXXX.

4. As a consumer protection advocate, I have filed more than fifty lawsuits alleging violations of the Telephone Consumer Protection Act.

5. I have extensive technical experience, including in the field of telephony.

6. Combined, this experience has given me insight into the methods telemarketers use to conceal their identities and has allowed me to develop methods of identifying those scammers who place telephone calls to me in violation of the TCPA.

7. For example, one method used by the initial caller in this case was to make calls using the caller ID 215-388-8972, which is an instance of local number spoofing. Simply put, that means that the caller manipulated the caller ID to appear to come from the telephone number of a conventional person. Therefore, identifying the origin of the caller on this first call merely through call records is impossible, since it is not a call for which any telephone carrier would have information.

8. This is an extremely common practice in the telemarketing industry, with telemarketers often using fake telephone numbers and fake names, such as "Cheap Insurance Rates Online," to conceal their true identities and avoid liability under the law for making telemarketing calls.

9. In cases such as this, it is necessary to feign interest in the telemarketer's script to ascertain their true identity and what product or services they are selling. Otherwise, the callers are impossible to identify and hold accountable for their telemarketing actions.

10. On April 17, 2020 at 3:02 p.m., I received a pre-recorded call on 215-322-XXXX from "Danny" with "Cheap Insurance Rates Online."

11. The call utilized an artificial intelligence and pre-recorded message technology known as an "Avatar," in which a telemarketer interacts with a consumer using pre-recorded messages.

12. The Avatar asked if I was interested in receiving a follow up phone call from "one of its auto rate specialists." At no time did the call make any reference to QuoteWizard.

13. In order to identify the legal entity behind this call, I interacted with the "Avatar" and provided it with distinct contact information. I did so as I understood from my past experience dealing with illegal telemarketers that a follow up call would then be made by the

entity responsible for the initial call, who could then be identified and held to account for its illegal actions.

14. I suspected from the outset that "Cheap Insurance Rates Online" was a fictitious name designed to disguise the entity of the entity legally responsible for the illegal telemarketing at issue.

15. I also suspected that if I gave the telemarketer my real vehicle information on the initial illegal telemarketing call that the entity who eventually called back in response to the initial illegal telemarketing call would simply lie and deny any connection with the original call.

16. In anticipation of this deception, I told "Danny" that I wanted a quotation for a 2010 Ford Explorer, despite never having owned this car. In addition, the Avatar mis-transcribed my name as "Andy Terrong." I intentionally provided this information so that, when I received a follow up communication from an entity providing a quote for a 2010 Ford Explorer, and looking for "Andy Terrong," that I would know that the entity following up was responsible for the initial illegal telemarketing call.

17. When the Avatar began asking for more detailed personal information—including my birth date—I informed the Avatar that I was not comfortable disclosing such information.

18. Even though I informed the Avatar that I was not comfortable providing personal information, my contact data still appears to have been sold to QuoteWizard.

19. Approximately three hours after my interaction with "Danny" I received an e-mail from Geico Insurance seeking to sell an insurance policy to "Andy Terrong."

20. The e-mail from Geico confirmed that it was contacting me because I had provided my information to "our partner site, Quotewizard."

21. At no time did I submit any information via QuoteWizard's website. The only information that precipitated the e-mail was the call from QuoteWizard.

28. I, and other class members, were harmed. We were temporarily deprived of the legitimate use of our phones, as a result of the illegal telemarketing call, our privacy rights were invaded, and our statutory rights as recognized by the TCPA were violated. Illegal telemarketing calls are frustrating, obnoxious, and annoying. They are a nuisance and disturbed the solitude of myself and all similarly situated class members.

22. I have reviewed the affidavit of Tricia Winker submitted by QuoteWizard in support of its Second Motion to Dismiss.

23. Most significantly, the Winkler Declaration confirms that the allegations set forth in my Complaint are true, and that QuoteWizard purchased my data from the third party who most likely was behind the initial illegal Avatar telemarketing call on April 17, 2020.

24. In addition, Ms. Winkler admits that QuoteWizard itself made two calls to the very same telephone number, which is on the Do-Not-Call Registry, on April 17, 2020, following the initial illegal Avatar call. Until I reviewed the Winkler Declaration I was unaware that these two calls linked to QuoteWizard.

25. My phone records confirm that these two calls made by QuoteWizard were made from Caller ID 215-622-2795. These calls were received at 3:42 PM and 4:29 PM, Eastern Standard Time.

26. Otherwise, the Winkler Declaration is replete with incorrect assertions. To begin with, I never consented to receive calls from QuoteWizard or any other entity with which it is affiliated. The Winkler Declaration states that QuoteWizard's follow up calls were never

answered. This is not true. I answered the call that was received at 3:42 PM EST, and I said "hello" multiple times before the line eventually disconnected on the remote end.

27. My number is on the Do-Not-Call Registry, and I did not provide any consent for QuoteWizard to place these calls to me, either manually or through the use of an ATDS.

28. I do not and have never submitted my telephone number to any online sign up or form for the purpose of bringing lawsuits, including under the TCPA.

29. I brought this case as a class action because I know that there are likely thousands more people in a similar situation such as myself, having received telemarketing calls from Defendants without their consent. This suit was brought not for personal motives or financial gain, but as a bulwark for the rights of consumers against illegal telemarketing.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Executed this 21st day of September, 2020, at Pennsylvania,

Andrew R. Perrong